IN THE UNITED STATES BANKRUPTCY
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TARA RETAIL GROUP, LLC, ) | Case No. 17-bk-57 |
| ) | |
| Debtors. ) | Chapter 11 |
| ) | |
| ) | |
| ELSWICK COMPANY, LLC d/b/a ) | |
| ANYTIME FITNESS, ELKVIEW ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Proc. No. 18-ap-16 |
| ) | |
| COMM2013 CCRE12 CROSSINGS ) | |
| MALL ROAD LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The Elswick Company, LLC ("Elswick"), seeks to recharacterize or equitably subordinate the $17 million proof of claim that Comm2013 CCRE12 Crossings Mall Road LLC [1] ("Comm2013"), filed against the bankruptcy estate of Tara Retail Group, LLC (the "Debtor"). Comm2013 seeks to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (6)[2] on the basis that Elswick lacks standing to assert those claims.

---

[1] Comm2013 is a Delaware Limited Liability Company, a successor in interest to U.S. Bank, National Association, as Trustee for the benefit of the holders of COMM 2013-CCRE 12 Commercial Mortgage Pass-Through Certificates.

[2] Comm2013 also seeks to dismiss Elswick's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state claims, and under Fed. Civ. P. 9(b) for failure to allege fraud with particularity. Given the court's ruling on Comm2013's motion, it will not address these additional arguments.

1

For the reasons set forth herein, the court finds that Elswick has constitutional, prudential, and statutory standing to assert claims for recharacterization and equitable subordination. The court, however, will stay this proceeding until the court has an opportunity to hear from the Debtor regarding whether Elswick should be allowed to proceed with its claims against Comm2013.

## I.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint against it when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When evaluating a motion to dismiss, the court must (1) construe the complaint in a light favorable to the non-movant, (2) accept the factual allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the plaintiff. 2 *Moore's Federal Practice – Civil* § 12.34 (2018). After undertaking these steps, the claim for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a motion to dismiss, the court is not adjudicating whether a plaintiff will ultimately prevail on the merits of the complaint; it is only determining if the plaintiff is entitled to offer evidence to support the claims. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

When a motion to dismiss alleges lack of statutory standing to assert a claim, not a lack of subject matter jurisdiction, the facts are reviewed under the same standards governing motions to dismiss under Rule 12(b)(6). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *see also Wikimedia Found. v. NSA/Central Sec. Serv.*, 857 F.3d 193, 210 (4th Cir. 2017) (distinguishing between reviewing facts necessary to establish constitutional standing with reviewing facts necessary to state a plausible claim for relief); *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (stating that a motion to dismiss for lack of statutory standing is based on the same standard of review used for a motion to dismiss).

## II.     BACKGROUND

The Debtor is the owner of The Crossings Mall in Elkview, West Virginia. It is a multi-tenant commercial property consisting of about 200,000 square feet. Public access to it is limited to a bridge over Little Sandy Creek. Elswick, doing business as Anytime Fitness, operates a 24-hour, 7-day a week fitness center at The Crossings Mall since executing a July 1, 2013 lease

2

agreement with the Debtor.

The Crossings Mall was previously an asset of Interstate Properties, LLC. In October 2012, that entity filed a Chapter 11 bankruptcy petition in the Northern District of Georgia.[3] In 2013 UBS Real Estate Securities, Inc. ("UBS") agreed to refinance The Crossings Mall for about $14 million on certain conditions, including that the borrower, which is the Debtor in this case, was to be an affiliate or wholly owned subsidiary of Interstate Properties' principal, Mr. Abruzzino. In addition, the Debtor had to be a single-purpose entity that was prohibited from engaging in any business activity other than owning The Crossings Mall.

To close the refinancing, UBS loaned the Debtor $13,650,000 on or about September 17, 2013. UBS subsequently assigned the loan to U.S. Bank National Association, as trustee for Comm2013 CCRE 12 Commercial Mortgage Pass Through Certificates, and in 2017, that entity assigned the loan to Comm2013.[4]

Under the parties' loan agreement, interest accrues at 6.34%, the default rate is 5% higher, the monthly debt service is $84,846.02 (excluding taxes, insurance, and capital reserves), and the stated maturity date is October 6, 2023.[5] The loan agreement is secured by a deed of trust, and it also required the execution of several other documents, including the Assignment of Leases and Rents, the Cash Management Agreement, and the Management Agreement.

Regarding the payment of tenant rents, the parties established the Clearing Account, which was under the sole dominion and control of Comm2013 and its servicer. All rents paid by the tenants of The Crossings Mall were paid directly to the Clearing Account and not to the Debtor or its management company.

The Clearing Account was swept daily and any funds in it were placed in the Cash Management Account, which was also under the sole dominion and control of Comm2013 and its servicer. The Debtor had no independent ability to make withdrawals. The Cash Management

---

[3] *In re Interstate Properties, LLC*, Case No. 12-bk-76037 (Bankr. N.D. Ga. Oct. 17, 2012).

[4] The court will use the name "Comm2013" to refer to all the actions of it and its predecessors-in-interest.

[5] It appears that the note matured in 10 years, but the note was amortized over 30 years.

Account contained multiple subaccounts, including accounts for taxes, insurance, debt service, capital expenditures, and operating expenses. Comm2013 was also the Debtor's irrevocable attorney in fact with full power of substitution to exercise the Debtor's rights in the funds.

The Capital Expenditures Fund in the Cash Management Account consisted of a monthly payment of $3,493.62 to pay for capital expenditures approved by Comm2013, the approval for which "shall not be unreasonably withheld or delayed." (Document No. 19-2, p. 87).

Regarding the tenant leases, the Debtor absolutely and unconditionally assigned all of them to Comm2013. The assignment was absolute and was not an assignment for additional security. Comm2013 also retained an irrevocable power of attorney coupled with an interest to collect and receive rents and, upon default, to incur expenses to operate and maintain the property, including exercising all rights and powers of the Debtor with respect to the leases. Property management was governed by a Management Agreement dated September 2, 2013.

In negotiating its rent, Elswick agreed to pay a minimum rent of $3,750 per month, plus an insurance contribution of $62.50, a common area maintenance contribution of $203 and a tax contribution of $270.83, for a total monthly payment of $4,286.33. Elswick deposited its monthly rent in the Clearing Account maintained by Comm2013's servicer.

In January 2016, the Debtor's management company obtained a quote for $9,200 to "replace a drop inlet culvert at the entrance of the Crossings Mall in Elkview." (Document No. 1, p. 64). In a subsequent email to Comm2013's loan servicer, the Debtor's property manager related that if this matter "is not resolved immediately the only entrance to the center could collapse." (*Id.* at p. 61).

On January 22, 2016, the servicer responded that it first wanted an explanation of why rent rolls were below the expected receipts. Collected rents were between $89,000 and $96,000 a month, and the scheduled rent was $128,420.80. Ultimately, the servicer did not release the requested funds for the culvert repair. In June 2016, the bridge running across the culvert washed away in a flood. In a July 28, 2016 letter from the Debtor's attorney to Comm2013's loan servicer, the Debtor stated that a new bridge would cost between $750,000 and $1 million. Comm2013 refused to fund the additional expense.

Elswick states that the loss of the bridge resulted in numerous individuals being stranded

at The Crossings Mall and significant business losses for tenants. On April 5, 2017, Elswick filed its proof of claim in the amount of $1 million. On May 22, 2017, it amended its proof of claim listing the amount as "undetermined." Comm2013 filed its proof of claim on February 27, 2017, in an amount exceeding $17 million.

On January 9, 2018, the Debtor filed its objection to Comm2013's proof of claim. (Document No. 538 in Case No. 17-bk-57). Among other things, the Debtor states that Comm2013 had an obligation to fund repairs to the culvert, the Debtor had no independent ability as a single purpose entity without revenue to make the repairs that were under Comm2013's "assumed actual participatory control," (*Id*. ¶ 48), and Comm2013's refusal to release funds to make the necessary repairs would have prevented the bridge from washing away in the flood. The Debtor further details Comm2013's alleged failure to make repairs after the flood and alleges that its refusal to release capital expenditure funds was in bad faith and in breach of its loan agreement. Then, the Debtor alleges that it and Comm2013 had a "special relationship" that makes Comm2013 liable in tort for property damages, economic losses, and which entitles the Debtor to equitably subordinate Comm2013's "claim to every other claim in the case." (*Id*. ¶¶ 48-52).

In a separate adversary proceeding, on July 20, 2018, the Debtor filed a third-party complaint and second amended counterclaim against Comm2013. (Adv. P. No. 18-ap-10, Document No. 72). Among other things, the Debtor alleges causes of action against Comm2013 for breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary duty, and tortious interference with business relationships with respect to the Debtor's tenants. These allegations are based on alleged facts that are substantially the same as those raised by Elswick.

### III.    ANALYSIS

Comm2013 asserts that Elswick lacks standing to assert that Comm2013's proof of claim should be recharacterized or subordinated. In resolving Comm2013's standing argument, the court will examine Elswick's constitutional, prudential, and statutory standing. Then, the court will consider whether allowing Elswick to separately assert these claims furthers the expeditious and efficient administration of the Debtor's bankruptcy estate.

A. **Standing**

To assert a cause of action, a litigant must have constitutional standing, which requires that there be an injury-in-fact, traceable to the alleged conduct of the defendant, and which is subject to redress by the courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Prudential standing limits the exercise of federal jurisdiction for reasons related to such considerations as orderly management of the judicial system. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004). Typically, prudential standing requires that a litigant not assert the rights of another, prohibits the adjudication of generalized grievances, and requires that a plaintiff's claims fall within the zone of interest protected by the law that is invoked. *Id.*

Statutory standing applies to legislatively-created actions and inquires "'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.'" *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (quoting Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 91 (2009)). When statutory standing is not clear, the court must look to the intent of the applicable statute. *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 339 (4th Cir. 2007). As stated by Professor Pathak, statutory standing is not a threshold question equal to constitutional or prudential standing; rather, it is merely a "useful shorthand" for the proposition that the "plaintiff must fall within the class of plaintiffs to whom Congress has made the cause of action available in order to recover." 62 Okla. L. Rev. at 123. Thus, statutory standing is an element of the cause of action. *CGM, LLC*, 664 F.3d at 52.

1. **Elswick's Standing to Assert a Recharacterization Claim**

Recharacterization generally occurs when a party asserts that a loan was made but the original circumstances of the loan compels treating the advance not as debt but as equity. 4 *Collier on Bankruptcy* ¶ 510.02[3] (2018). Thus, recharacterization cases determine whether a debt exists that can be asserted on a proof of claim, or whether it is an equity interest asserted by a proof of interest. *Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.)*, 453 F.3d 225, 232 (4th Cir. 2006). "Recharacterization is a definitional attack." *FCC v. Airadigm Communs., Inc. (In re Airadigm Communs., Inc.)*, 616 F.3d 642, 658 (7th Cir. 2010).

6

If Elswick is successful in its request for recharacterization, Comm2013's proof of claim may receive the same treatment as an equity proof of interest. Under 11 U.S.C. § 726, unsecured claims are paid in full before there is payment to equity interests. Thus, Elswick has constitutional standing to request recharacterization of Comm2013 proof of claim because: (1) Elswick has asserted an unsecured claim against the Debtor's bankruptcy estate and the payment on that claim may be non-existent, or reduced, based on the existence of Comm2013's alleged secured claim against the Debtor's bankruptcy estate; (2) Elswick's injury – a potential inability-receiving less than a 100% payment from the bankruptcy estate – is directly traceable to Comm2013's classification of the amount owed to it as debt; and (3) the injury is subject to redress by the court because the court has the equitable power to recharacterize Comm2013's debt claim as an equity interest.

Similarly, Elswick has prudential standing to assert a claim for recharacterization because Elswick is asserting rights that are associated with its direct damages resulting from the loss of access to The Crossings Mall. The bankruptcy court has the equitable power to recharacterize Comm2013's proof of claim as an equity contribution so that Elswick can receive a greater distribution from the bankruptcy estate.

Regarding Elswick's statutory standing to bring a cause of action for recharacterization, the court notes that there is no express cause of action in the Bankruptcy Code for recharacterization, which is essentially an objection to a claim on the basis that it is an equity interest. *In re Protea Biosciences, Inc.*, Case No. 17-1200, 2018 Bankr. LEXIS 3329 (Bankr. N.D.W. Va. Oct. 30, 2018). Under 11 U.S.C. § 1109(b), a creditor is a party in interest that may raise and appear on any issue, and a creditor is specifically authorized to object to another creditor's proof of claim under § 502(a) of the Bankruptcy Code. On the other hand, under § 1107(a), a Chapter 11 debtor has the statutory duties of a Chapter 11 trustee as stated in § 1106(a)(1), which includes the duty to examine proofs of claim and, if a purpose would be served, to object to the allowance of any claim that is improper. § 704(a)(5).

Because recharacterization is essentially an objection to the allowance of a claim, the court finds the Advisory Committee note to Fed. R. Bankr. P. 3007 instructive regarding who has the authority to pursue a claim objection:

7

> While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to examine proofs of claim and object to improper claims.

*Id.*

As the Advisory Committee note clarifies, a creditor like Elswick has the statutory standing to object to a proof of claim. The issue to be resolved is not one of standing; rather, it is who should be allowed to prosecute the objection to a proof of claim based on concerns of an orderly and expeditious administration of the Debtor's estate.

In other cases that address the authority of a creditor to assert a recharacterization claim, sometimes the issue is framed in the context of a creditor's committee seeking a grant of derivative standing from the court, *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 566 (Bankr. S.D.N.Y. 2016); sometimes it is an objection to standing that has been overruled when a chapter trustee is joined as a party plaintiff, *United States v. State St. Bank & Trust Co.*, 520 B.R. 29, 72 (Bankr. D. Del. 2014), and sometimes the court recognizes that the creditor had standing to pursue the claim on its own. *Citizens Bank & Trust Co. v. Riederer (In re Brooke Capital Corp.)*, Adv. No. 08-6132, 2011 Bankr. LEXIS 210 at *22 (Bankr. D. Kan. 2011) ("The Court believes in priority disputes among secured creditors, each creditor can ordinarily question any other creditor's assertion of a perfected security interest, and [the court] will not deny Citizens' recharacterization claim on this ground."). *See also* Jo Ann J. Brighton, *Feature: Is It a Capital Contribution or a Loan?, Update: Recharacterization--Practical Pointers in an Evolving Arena*, 22-10 ABIJ 18, 67 (Dec. 2003 – Jan. 2004) ("[T]he question seems open as to who has proper standing to bring such actions . . . [p]ractically speaking . . . creditors' committees are the ones raising the issues and bringing the actions . . . . There is also room for the possibility that a single creditor may have standing . . . .").

Here, the Debtor's case is in Chapter 11: there is no trustee, no creditor's committee, and the Debtor is not a party to this adversary proceeding. To date, however, the Debtor has not specifically objected to Elswick seeking recharacterization of Comm2013's proof of claim; complained that Elswick is interfering with the bankruptcy estate's process for objecting to claims;

8

and has not independently asserted an objection to claim, or cause of action, that specifically mentions recharacterization.

Therefore, at this stage of the litigation the court will deny Comm2013's motion to dismiss Elswick's recharacterization claim on grounds of standing and will direct Elswick to file a motion in the Debtor's main bankruptcy case that requests authority from the court, on notice to the Debtor, to pursue its recharacterization claim in this adversary proceeding.

### 2. Elswick's Standing to Pursue Equitable Subordination

"Subordination is a remedy in which the order of payment rather than the existence of the debt is in issue." 4 *Collier on Bankruptcy* ¶ 510.02[1] (2018). Subordination is often based on creditor misconduct such as fraud or usury. *Id.* Subordination is remedial and requires a showing that: (1) the claimant engaged in inequitable conduct; (2) that conduct injured other creditors; and (3) subordination is consistent with other bankruptcy law. *In re ASI Reactivation, Inc.*, 934 F.2d 1315, 1320 (4th Cir. 1991).

Elswick has constitutional standing to request equitable subordination of Comm2013 proof of claim because: (1) Elswick has asserted an unsecured claim against the Debtor's bankruptcy estate and the payment on that claim may be non-existent or reduced based on the existence of Comm2013's alleged secured claim against the Debtor's bankruptcy estate; (2) Elswick asserts that its injury –receiving less than a 100% payment from the bankruptcy estate – is directly traceable to Comm2013's conduct regarding its failure to fund repairs to a culvert under the only bridge access to The Crossings Mall, and (3) the injury is subject to redress by the court because the court has the power to subordinate Comm2013 claim under 11 U.S.C. § 501(c).

Similarly, Elswick has prudential standing to assert a claim for equitable subordination because Elswick is asserting rights that are associated with its direct damages from the loss of access to The Crossings Mall. The bankruptcy court has the power to subordinate Comm2013's proof of claim so that other creditors, like Elswick, can receive a greater distribution from the bankruptcy estate.

Regarding statutory standing, the right to bring a claim for equitable subordination is governed by 11 U.S.C. § 510(c) and Fed. R. Bankr. P. 7001(8). Section 510 of the Bankruptcy Code does not specify who has the right to assert a claim for equitable subordination. Under 11

U.S.C. § 1109(b), a creditor is a party in interest that may raise and appear on any issue, however, under §§ 1107(a) and 1106, a Chapter 11 debtor in possession has the right to control property of the bankruptcy estate, which includes causes of action. § 541(a)(1). The general right to be heard in § 1109 does not allow "a creditor to pursue substantive remedies that other Code provisions make available only to other specific parties." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8 (2000).

To avoid hijacking a cause of action that belongs to a bankruptcy estate, the general rule is that a creditor may assert rights that are personal to the creditor but not matters that are generalized for the bankruptcy estate. *E.g.*, *In re John Stewart Custom Woodworking, Inc.*, Case No. 16-bk-816, 2017 Bankr. LEXIS 2014 at *7 (Bankr. N.D.W. Va. July 20, 2017) ("When the resulting injury is specific to an individual creditor or group of creditors, however, the injured creditor or creditors are the exclusive owners of the claim [and it is not under the exclusive control of the bankruptcy trustee]."); *see also In re Seven Seas Petroleum*, 522 F.3d 575, 584 (5th Cir. 2008) ("If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it."); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.").

Indicia of a personal right to assert a claim for equitable subordination includes seeking only to subordinate the defendant's claim to the plaintiff's claim rather than the claims of all creditors of the bankruptcy estate. *NM Enters. v. Harrington (In re Flying Star Cafes, Inc.)*, 568 B.R. 129, 135 (Bankr. D.N.M. 2017); *In re Elrod Holdings Corp.*, 392 B.R. 110, 115 (Bankr. D. Del. 2008). This requires a particularized injury that is different from the harm suffered by creditors generally. For example, in the case of *Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82, 87 (2d 2007), the court denied standing to a creditor's committee to assert a claim for equitable subordination on the grounds that the creditor's committee had a close identity of interest with the debtor and the committee was not itself a creditor that could allege a particularized injury. *See also St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir.1989) ("If a claim

10

is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."). As recognized by the Court of Appeals for the Seventh Circuit Court, however, "when a party seeks equitable subordination, it is not acting in the interests of all the unsecured creditors . . . individual creditors have an interest in subordination separate and apart from the interests of the estate as a whole [and] should have an opportunity to pursue its separate interest." *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990). "Even where a Trustee brings an action against a creditor based on equitable subordination, some other individual creditor may have an interest uniquely affected by that alleged inequitable conduct . . . and therefore have standing separate from the trustee." *Black Palm Dev. Corp. v. Barlage*, No. 1:09-CV-220, 2011 U.S. Dist. LEXIS 118734 at *11-12 (W.D.N.C. Oct. 13, 2011).

In this case, to show a particularized injury, Elswick asserts that it has a lease with the Debtor that required it to pay amounts in addition to the minimum rent for the maintenance of the common areas of The Crossings Mall. Comm2013 controlled how the rents were distributed. When the Debtor's management company made a request for funds to repair a culvert in January 2016, Comm2013 did not fund that request. When a subsequent flood washed away the only bridge access to The Crossings Mall, Elswick asserts that it suffered a particularized injury because it suffered business damages as a result of the flood and collecting a monthly amount from it for common area maintenance and then failing to use those funds for their promised purpose is a violation of its individual lease agreement. Elswick also asserts that Comm2013 had independent duties to all customers, employees, licensees, and invitees located at the Crossings Mall; however, in its prayer for relief it only requests that Comm2013's loan be subordinated to its unsecured claims.

In the Debtor's bankruptcy case, in addition to the claims scheduled by the Debtor, eighty proofs of claim have been filed, most of which are related to damages sustained after the loss of bridge access to The Crossings Mall. There appear to be a few claims unrelated to the loss of the bridge, such as a tax claim, and an unpaid water bill.

Also, the Debtor has already filed its own objection to Comm2013's proof of claim asserting, among other things, that Comm2013's claim should be equitably subordinated. The

grounds alleged by the Debtor to support its equitable subordination argument are substantially similar to the grounds asserted by Elswick. More specifically, the Debtor alleges that Comm2013 failed in its duty to authorize funding to repair the culvert under the bridge and as a result of its alleged inequitable conduct, Comm2013's claim "should be equitably subordinated to every other claim in the case." (Case No. 17-bk-57, Document No. 538, ¶¶ 48-52). In addition, the Debtor has asserted causes of action against Comm2013 in its Third Party Complaint and Second Amended Counterclaim whereby the Debtor alleges causes of action for breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary duty, and tortious interference with business relationship – all of which arise out of the same operative facts that give rise to Elswick's claim for equitable subordination.

Of course, the Debtor is not a party to this adversary proceeding and therefore has not had an opportunity to be heard on whether Elswick should be allowed to proceed on its claim for equitable subordination, or what kind of case management, if any, the Debtor desires in the administration of its estate.[6] Consequently, the court will deny Comm2013's motion to dismiss Elswick's claim for equitable subordination on grounds of standing, and will direct Elswick to file a motion in the Debtor's main bankruptcy case seeking authority from the court, on notice to the Debtor, to pursue its claim for equitable subordination in this adversary proceeding.

## IV.   ORDER

For the reasons set forth above, it is

**ORDERED** that the Motion to Dismiss filed by Comm2013 on July 17, 2018 (Document No. 19), be and hereby is DENIED WITHOUT PREJUDICE. It is

**FURTHER ORDERED** that within 30 days of entry of this Order, Elswick must file a motion in the Debtor's main bankruptcy case that requests authority for it to pursue its claims for

---

[6] Under certain circumstances, a creditor may be granted derivative standing to pursue a cause of action that is property of the Debtor's estate if it can show the estate's refusal to bring a colorable claim and it obtains leave to sue from the bankruptcy court. *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, (3d Cir. 2003). For its part, the Court of Appeals for the Fourth Circuit has not expressly determined if such derivative standing exists. *Scott v. Nat'l Century Fin. Enters. (In re Balt. Emergency Servs. II)*, 432 F.3d 557, 560-61 (4th Cir. 2005).

recharacterization and equitable subordination against Comm2013. Elswick shall serve the motion on the Debtor as a contested matter and the Bankruptcy Clerk will issue a notice of the time to respond to the motion. The failure of Elswick to timely file the motion within 30 days of the entry of this Order may result in the dismissal of Elswick's adversary complaint, without prejudice, without further notice or opportunity for a hearing.

    **SO ORDERED.**